## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LINDA GUZZO | : | |
| *Plaintiff* | : | 3:22CV00858 |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT STATE | : | |
| COLLEGES AND UNIVERSITIES | : | |
| *Defendant* | : | July 8, 2022 |

## NOTICE OF REMOVAL

### TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT:

1. An action was commenced against the above-captioned Defendant in the Judicial District of Hartford entitled *Linda Guzzo v. Connecticut State Colleges and Universities, et. al.*, bearing a return date of July 26, 2022.

2. The Summons and Complaint were served on Defendant on June 17, 2022, bearing a Return Date of July 26, 2022.

3. The undersigned filed her appearance in the state court matter on July 8, 2022.

4. In the Complaint, the Plaintiff alleges that the Defendant denied her request for a reasonable accommodation for her disabilities and discriminated against her in her employment because of her disabilities in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq., as amended by the American with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 et seq. ("ADAAA") (Counts Four and Five). The Plaintiff further asserts claims under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 et

seq. and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2) and (b) pursuant to Connecticut's "accidental failure of suit" statute, Conn. Gen. Stat. § 52-592.

5.     The Plaintiff seeks economic losses, including lost wages and benefits of employment, compensatory damages, including but not limited to damages for her pain, suffering and emotional distress, double or liquidated damages as provided by the FMLA, reasonable attorney's fees and costs, other make whole relief, including placing plaintiff in a position in defendant's employ which she would have held, and "such other relief as the Court deems appropriate".

6.     Because the Complaint involves federal questions founded on claims or rights arising under the U.S. Constitution, treaties or laws of the United States, pursuant to the Rehabilitation Act, over which the district courts have original jurisdiction, this matter is removable pursuant to Title 28 U.S.C. § 1441(a) through (c).

7.     The Defendant files herewith a copy of the Complaint which was served upon it.

**WHEREFORE**, pursuant to Title 28 U.S.C. § 1446, the undersigned Defendant respectfully requests that the above-referenced action now pending against it in the Superior Court of Connecticut, Judicial District of Hartford, be removed there from to the United States District Court for the District of Connecticut for all future proceedings.

DEFENDANT

WILLIAM TONG
ATTORNEY GENERAL

By:    /s/ *Carolyn E. Ennis*
        Carolyn E. Ennis
        Assistant Attorney General
        Employment Section
        165 Capitol Avenue, Suite 5000
        Hartford, CT 06106
        Tel:  (860) 808-5340
        Fax: (860) 808-5383
        E-mail: Carolyn.Ennis@ct.gov
        Federal Bar # ct28485


## **CERTIFICATION**

I hereby certify that on July 8, 2022, a copy of the foregoing was filed electronically.

Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing

system.  Parties may access this filing through the Court's system.


        /s/ *Carolyn E. Ennis*
        Carolyn E. Ennis (# ct28485)
        Assistant Attorney General

# SUMMONS - CIVIL

JD-CV-1 Rev. 9-14
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
*www.jud.ct.gov*

See other side for instructions

| | |
|---|---|
| ☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500. | TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint. |
| ☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more. | |
| ☒ "X" if claiming other relief in addition to or in lieu of money or damages. | |

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| 95 Washington Street, Hartford, CT 06106 | ( 860 )548-2700 | July — 26 , 2 022 — Month — Day — Year |

| ☒ Judicial District ☐ Housing Session | G.A. Number: | At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349) Hartford | Case type code *(See list on page 2)* Major: M   Minor: 90 |
|---|---|---|---|

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* Peter D. Goselin, P.O. Box 331313, Hartford, CT 06133 | Juris number *(to be entered by attorney only)* 411639 |
|---|---|

| Telephone number *(with area code)* ( 860 ) 580-9675 | Signature of Plaintiff *(If self-represented)* | |
|---|---|---|
| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. | ☒ Yes  ☐ No | Email address for delivery of papers under Section 10-13 *(if agreed to)* pdgoselin@gmail.com |

| Number of Plaintiffs: 1 | Number of Defendants: 2 | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| First Plaintiff | Name: Guzzo, Linda Address: 26 Paxton Road, West Hartford, CT 06107 | P-01 |
| Additional Plaintiff | Name: Address: | P-02 |
| First Defendant | Name: Connecticut State Colleges and Universities Address: 61 Woodland Street, Hartford, CT 06105 | D-01 |
| Additional Defendant | Name: Address: | D-02 |
| Additional Defendant | Name: Address: | D-03 |
| Additional Defendant | Name: Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left Peter D. Goselin | Date signed 06/17/2022 |
|---|---|---|---|

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. | File Date |
| b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. | |
| c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. | |
| d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | |

| I certify I have read and understand the above. | Signed *(Self-Represented Plaintiff)* | Date | |
|---|---|---|---|
| Name and address of person recognized to prosecute in the amount of $250 | | | |

| Signed *(Official taking recognizance; "X" proper box)* | ☐ Commissioner of the Superior Court ☐ Assistant Clerk | Date | Docket Number |
|---|---|---|---|

| | : | |
|---|---|---|
| **Linda Guzzo,** | : | **SUPERIOR COURT** |
| | : | **OF CONNECTICUT** |
| | : | |
| **Plaintiff** | : | **HARTFORD JUDICIAL** |
| | : | **DISTRICT at HARTFORD** |
| | : | |
| **v.** | : | |
| | : | |
| **Connecticut State Colleges** | : | |
| **and Universities** | : | |
| | : | |
| **Defendant** | : | |
| | : | |

### COMPLAINT

1.      The plaintiff, Linda Guzzo, initiated an action on February 26, 2021, in the

United States District Court for the District of Connecticut as *Linda Guzzo v. Connecticut*

*State Colleges and Universities, State of Connecticut*, Case No. 3:21-cv-254 (CSH) setting

out claims against her employer, Connecticut State Colleges and Universities (CSCU), an

agency of the State of Connecticut.[1] The defendant moved to dismiss the plaintiff's claims

stated therein under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C.

§621, *et* seq., and the Connecticut Fair Employment Practices Act (CFEPA), Conn.Gen.Stat.

§46a-60, *et seq.* on the basis that these claims were barred by the doctrine of sovereign

immunity.[2] On June 28, 2021, Judge Charles S. Haight, Jr. granted the plaintiff's motion to

amend the Complaint by, *inter alia,* "removing the ADEA and CFEPA claims."[3] Subsequently,

on March 28, 2022, Judge Haight granted defendant's motion to dismiss the plaintiff's claims

stated in that action under the Family and Medical Leave Act, 29 U.S.C. §2615(a)(2) and

---

1    *Linda Guzzo v. Connecticut State Colleges and Universities, State of Connecticut*, Case No. 3:21-cv-254,
     Document #1 (hereinafter referenced as "Doc. #__").
2    Doc. #13.
3    Doc. #20.

§2615(b), ruling in favor of the defendant's argument "that the Eleventh Amendment grants CSCU immunity to suit under the FMLA self-care provision."[4]

2. Now, consistent with Connecticut's "accidental failure of suit" statute, Conn.Gen.Stat. §52-592, the plaintiff seeks to bring in this Court claims that were withdrawn and/or dismissed for lack of jurisdiction. Specifically, the plaintiff alleges in Counts One and Two that the defendant discriminated against her because of her age and retaliated against her for her exercise of rights in violation of the Connecticut Fair Employment Practices Act and alleges in Count Three that the defendant discriminated and/or retaliated against her because she exercised rights under the Family and Medical Leave Act, 29 U.S.C. §2615(a)(2) and §2615(b).

3. The plaintiff further alleges in Counts Four and Five that the defendant denied her request for a reasonable accommodation for her disabilities and discriminated against her in her employment because of her disabilities in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq., as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §12101 et seq. ("ADAAA").

4. The plaintiff, Linda Guzzo, is a person residing at 26 Paxton Road, West Hartford Connecticut.

5. The plaintiff is a woman; her date of birth is December 2, 1958.

6. The plaintiff suffers from an anxiety disorder that substantially limits her ability to concentrate, sleep, and work as compared to most people in the general population.

---

4   Doc. #32.

7.     The plaintiff suffers from a chronic digestive disorder that substantially limits the plaintiff in the functioning of her digestive system as compared to most people in the general population.

8.     The plaintiff suffers from situation hypertension that substantially limits her ability to concentrate, sleep, and work as compared to most people in the general population.

9.     The plaintiff suffers from a chronic impairment due to an injury to her right foot that substantially limits her ability to walk and climb stairs as compared to most people in the general population.

10.     The plaintiff suffers from vitiligo, a disfiguring condition.

11.     Plaintiff has and has had a "regarded as disability" as defined in the ADAAA at 42 U.S.C. §§12102(1) and (3) and incorporated into the Rehabilitation Act, in that she has an actual or perceived emotional impairment and an actual or perceived physical impairment.

12.      Plaintiff is and at all relevant times has been an "individual with a disability" within the meaning of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 705(9) (B) and (20)(B), which incorporates by reference the standards of the Americans with Disabilities Act, as amended in 2008 ("ADAAA"). The disabilities described in paragraphs 6 through 10, above, constitute "serious medical conditions" for purposes of the Family and Medical Leave Act, 29 U.S.C. §2601, et seq.

13.     Defendant Connecticut State Colleges and Universities (CSCU) is an agency of the State of Connecticut, with a principal place of business at 61 Woodland Street, Hartford, Connecticut. CSCU is a program or activity receiving Federal financial assistance within the meaning of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq., as amended

3

by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §12101 et seq.

("ADAAA"), and is therefore an employer subject to the Rehabilitation Act.

14.     The defendant is, at all times relevant to this Complaint, an employer subject to the requirements of the Connecticut Fair Employment Practices Act; and the federal Family and Medical Leave Act.

15.     The plaintiff was employed by the defendant from in or about 1984 to the date of her involuntary retirement, April 1, 2022.

16.     Over the course of the plaintiff's employment by the defendant, she held the positions of Director of Continuing Education Business Programs; Coordinator, Business & Industry Services; Director of Business & Industry Services; Interim Associate Dean of Continuing Education; Associate Dean of Continuing Education; and Dean of Workforce Development & Continuing Education.

17.     Throughout the plaintiff's employment by the defendant, she consistently performed the duties of her position at or above the reasonable expectations of her supervisors, including for a time performing the duties of two long term vacant director positions in addition to her position as Dean, with no additional compensation.

18.     Beginning in or about 2018, the plaintiff reported to Duncan Harris, Interim Campus Chief Executive Officer for Capital Community College and subsequently Campus Chief Executive Officer for Capital Community College, as part of his "Cabinet" of direct reports.

19.     The plaintiff was the oldest of the five management employees who were Harris's direct reports comprising the Cabinet.

4

20.     From the time that the plaintiff began reporting to Harris, he and/or Josephine Agnello-Veley, defendant's Director of Human Resources for Capital Community College (and also a member of Harris's "Cabinet") made repeated inquiries to the plaintiff about her retirement plans.

21.     In response to these inquiries, the plaintiff repeatedly stated to Harris and to Agnello-Veley that she had no plans to retire, but was looking for promotional opportunities.

22.     Defendant has a history of placing individuals into "interim" positions in order to delay conducting searches. The delay provides temporary promotional opportunities, increased compensation, and advantages to incumbents when searches are conducted to permanently fill positions.

23.     In or about May and June 2018, the plaintiff was passed over for appointment to the position of Interim Academic Dean of Capital Community College.

24.     Harris told the plaintiff that if she applied for the position, she would not be considered because she was "near retirement."

25.     Younger, less-qualified employees were appointed to those positions.

26.     Harris was aware of the plaintiff's physical disability, as described in paragraph 9, above. Beginning in or about May 2019, on several occasions where Harris and his "Cabinet" attended off-campus events, plaintiff's physical disability was not considered. Plaintiff had to draw attention to herself by using an elevator rather than stairs, had difficulty walking the long distances to the locations, and using high rise collaborative seating as required by Harris as part of "team building".

5

27.     On a number of occasions another Cabinet member commented on plaintiff's "white sneakers," an age-based stereotype. Harris ratified and did not challenge his subordinate's ageist comments.

28.     At monthly Cabinet meetings, Harris and/or Agnello-Veley circulated lists of employees who they considered to be at or near retirement age.

29.     Harris frequently referred to or introduced plaintiff as his oldest manager.

30.     In or about May and June 2019, plaintiff was passed over for the permanent appointment to Academic and Student Services Dean for Capital Community College. Harris told the plaintiff that if she applied for the position, she would not be considered because she was "near retirement."

31.     In or about July 2019, during a meeting of Duncan Harris with his immediate reports, he praised the younger members of the Cabinet with predictions for their future, such as "Miah you will become a president. Jason you will earn your doctorate. Josephine you will teach."

32.     Harris' comment about the plaintiff was that she would be walking out with a walker, and he proceeded to physically mimic the plaintiff walking out the door with a walker.

33.     Harris' comment and mimicing of the plaintiff were intentional mocking of the plaintiff's age and/or physical disability.

34.     In or about August 2019, prior to the opening of the defendant's Leadership, Excellence, Achievement and Development (LEAD) Center, a project that plaintiff designed and initiated, Harris told plaintiff that she would not be speaking at the opening and that he would orchestrate photographs of the opening to exclude plaintiff because he wanted the LEAD Center to present a "young" image.

6

35.     In or about September 2019, with respect to an incident involving a threat of workplace violence against the plaintiff by another employee, the defendant failed to follow its own procedures, including by failing to keep plaintiff informed about steps it should have taken to ensure her safety.

36.     The defendant's handling of the threat of violence directed toward the plaintiff was intended to pressure her to quit or retire.

37.     Text from Duncan Harris regarding a photo with external business partners in August 2019 did not portray the plaintiff positively due her age.

38.     Beginning in or about September 2019, while plaintiff was on an approved FMLA leave of absence, in a meeting with plaintiff's staff, Harris announced his intention to intercept all of plaintiff's email, mail, and calls. Harris accessed the plaintiff's medical certificates and FMLA documents and communications.

39.     Beginning in or about September 2019, while plaintiff was on an approved FMLA leave of absence, Harris moved plaintiff's office to a less secure location that was more remote from her colleagues and cut off plaintiff's communications with the Cabinet, campus staff and faculty, plaintiff's own staff, and external partners.

40.     Beginning in or about September 2019, while plaintiff was on an approved FMLA leave of absence, Harris falsely informed external partners that they were not to communicate with plaintiff because she was retiring and/or otherwise not returning to work.

41.     Harris also removed plaintiff from the Cabinet group texts which was the standard form of communication among his management team.

42.     Due to Harris's actions, while on FMLA the plaintiff received no communications from the Cabinet even for informational purposes.

7

43.    Harris' actions toward the plaintiff when she went on FMLA leave were intended to pressure the plaintiff to quit or retire.

44.    When the plaintiff returned to work, she discovered that her office had been relocated and all of her files and personal belongings had been removed. Both Human Resources and Campus Security stated they were unaware of whether or where the plaintiff had been assigned to work.   Harris also removed the plaintiff's reserved parking space, so that the plaintiff was forced to park in less secure locations and at longer distances, exacerbating plaintiff's disabilities.  Harris refused plaintiff's requests for the return of her reserved parking space.

45.    Ultimately, plaintiff was assigned to an office she had previously occupied. The office was not ready for occupancy such that furniture had to be rearranged in order for the space to be usable, there was no working computer in the office, no heat and no security measures for the main door of the office, which was not visible by the plaintiff from her workspace.

46.    Harris told plaintiff that some of her missing files might be located in an unused work area known as "the kitchen," and instructed her to clean out the work area.  Harris also instructed the plaintiff to clean out the office of another employee who retired while the plaintiff was on FMLA. These were not a normal part of the plaintiff's duties. Harris' instructions to the plaintiff were intended to encourage her to quit or retire.

47.    Most of plaintiff's files and all of her personal belongings that had been removed from her office while she was on FMLA leave were never located or returned.

8

48.     In 2020, Connecticut State Colleges & Universities accepted applications for three vacant positions for Chief Workforce Development Officer, including a position for the Capital-East Region, which includes Capital Community College.

49.     Harris and Agnello-Veley interfered with the normal chain of communications that would have alerted plaintiff to the vacant positions, in order to prevent her from applying.

50.     Nonetheless, plaintiff learned of the vacant positions and applied.

51.     Although was the most experienced and qualified for the position, she was not selected for any of the vacant positions.

52.     Plaintiff was the only Dean of Workforce Development and Continuing Education not selected for one of the executive level vacant positions.

53.     Diane Bordonaro, who held the position of Director of Continuing Education (a subordinate position with no experience in the role of Dean) was selected for the other vacant position as Chief Workforce Development Officer.

54.     Harris was a required reference for the Chief Workforce Development Officer position. None of plaintiff's other references were contacted, which included former presidents and executives.

55.     As a result of Bordonaro's promotion, she became the plaintiff's "direct line" manager while Harris remained as her "dotted line" manager.

56.     Plaintiff also applied for the position of Associate Vice President of Student Success Management. Although qualified, she was not selected for the position.

57.     Beginning in or about August 2020, Bordonaro and Harris took actions to remove responsibilities from plaintiff's position, diminish her position, and humiliate her. These actions were intended to pressure the plaintiff to quit or retire.

9

58.     Bordonaro and Harris transferred responsibility for the Financial Literacy (FIRST) Center, Career Services, and Extension Fund Programs – initiatives that plaintiff had created and successfully led – to other younger, less-qualified employees.

59.     Harris modified contracts for plaintiff' staff without consulting her and excluded her from communications with her staff; he has also permitted other staff to give directives to plaintiff's staff.

60.     Bordonaro and Harris ignored plaintiff's requests to serve on committees and projects and participate in professional development opportunities.

61.     Bordonaro and Harris refused to provide plaintiff with requested documents that had been provided to other employees.

62.     Harris actively discouraged other employees and external partners from communicating with plaintiff or seeking her assistance.

63.     Harris informed plaintiff that other existing areas of responsibility in her position are or will be transferred to other employees.

64.     Harris removed plaintiff's responsibility for managing recently awarded grants and assigned them to other staff members.

65.     Bordonaro, as Chief Workforce Development Officer for Capital-East Region, scheduled the first meeting to discuss the regional plan for the operation of workforce development and continuing education – a meeting for which plaintiff would ordinarily have been expected to be present – for a date two days before the end of plaintiff's vacation. The selection of the date was made by Bordonaro and not based on the polling of attendees.

10

66. Bordonaro refused plaintiff's request to reschedule the meeting, even though it meant not only that plaintiff would not be present, but that she would not be able to prepare her own staff for the meeting.

67. Bordonaro also refused plaintiff's request to record the meeting and provide notes so that she could be aware of what transpired, even though she could not be present.

68. Bordonaro scheduled multiple meetings with the plaintiff's staff without informing and updating the plaintiff.

69. Bordonaro took actions to remove responsibilities from plaintiff's position, diminish her position, and took actions intended to humiliate plaintiff, including assigning projects directly to plaintiff's staff, giving her staff directions, excluding plaintiff from meetings, asking in meetings if plaintiff knew how to perform tasks that she had been doing for more than thirty years, and informing external partners not to communicate with plaintiff.

70. Bordonaro and Harris refused to adjust plaintiff's vacation time so she could respond to time sensitive and highly visible programs, that resulted in her working multiple days while on vacation.

71. These actions by Bordonaro and Harris were intended to pressure the plaintiff to quit or retire.

72. On or about February 7, 2020, the defendant became aware that the plaintiff had commenced an administrative claim at the Connecticut Commission on Human Rights against the defendant, alleging that it had discriminated against her on the basis of her age.

73. Harris has made several references to the fact that the plaintiff does not engage in social media such as Facebook as an "age thing." Harris repeatedly asked plaintiff if she

11

knew that documents can be read on the computer and did not need to be printed which Harris referred to as "old school".

74. Defendant has repeatedly ignored plaintiff's safety concerns and has not followed required safety agreements due to the plaintiff's age discrimination complaint.

75. In or about October 2020, defendant rescinded plaintiff's annual salary increase.

76. In or about August 2021, and although Harris was well aware of the plaintiff's ongoing medical issues, he informed the plaintiff that the defendants intended to open a Covid-19 testing site adjacent to her office.

77. The plaintiff complained to Harris that there were numerous other locations in the college where the testing center could have been placed, and that by locating it in the vicinity of her office, she was being exposed to serious and possibly deadly conditions.

78. Harris did not respond to the plaintiff's complaint or take any action to re-locate the testing center, except on one occasion sarcastically advising the plaintiff to "mask up."

79. Beginning at that time and continuing until her involuntary retirement in 2022, the plaintiff made repeated complaints to the defendants regarding the placement and operation of the Covid-19 testing center and the potential hazard that its presence posed to her.

80. Despite the plaintiff's best efforts and the obvious risks to her health and well-being, the plaintiff was unable to convince the defendant to relocate the Covid-19 testing center.

81. Defendant's failure and/or refusal to relocate the Covid-19 testing center put the plaintiff at considerable and completely unnecessary risk to her health and caused her severe emotional distress. Students and staff who came to the floor seeking Covid-19 testing

12

frequently came to or into the plaintiff's office either believing her office was the testing site or asking for directions. Staff from the Covid-19 testing center inappropriately disposed of medical waste and failed to follow protocols that would have made the area more safe. Public safety staff who were alerted to the inappropriate disposal failed to take action and/or made false statements to avoid taking action.

82.    Around this time the plaintiff also expressed concern about the possibility of being required to return to work full time on the campus. The plaintiff communicated to Human Resources that her doctor had requested that as a reasonable accommodation for her disabilities, she should be allowed to work from home most of the week.

83.    Instead of addressing the plaintiff's request for a reasonable accommodation, Human Resources informed the plaintiff that it would be "better" if she requested to be allowed to work from home under the defendant CSCU's teleconference policy.

84.    When the plaintiff then made the request to be allowed to work from home under the teleconference policy, defendant Bordonaro immediately informed her that she would need to "justify" her need to work from home. This was distressing to the plaintiff because she had requested a reasonable accommodation so that she would not have to disclose information about her medical condition to Bordonaro.

85.    Although the plaintiff continued to express her concern to Human Resources that she should be considered for a reasonable accommodation to her disability and that she was disturbed by Bordonaro's efforts to obtain information about the plaintiff's medical condition, they continued to tell her that she should request to work from home under the teleconference policy.

13

86.     In January 2022, the plaintiff complained in an email to Bordonaro and Harris about her exclusion from a meeting with Hartford Adult Education and Capital Workforce Partners, long-time working partners with the plaintiff. The plaintiff copied the email to Diane Mazza, defendant's Human Resources Shared Services Director of HR Strategy and subsequently requested a meeting with Mazza to re-state her complaint about being excluded from meetings and having responsibilities taken away.

87.     Finally, in February 2022, the plaintiff participated in a teleconference with Nicholas D'Agostino, Director of Equal Employment Opportunity for the defendant CSCU.  In that meeting the plaintiff complained, inter alia, about the proximity of the Covid-19 testing center. In doing so, the plaintiff explicitly stated and emphasized to D'Agostino that there were numerous other potentially suitable locations for the Covid-19 testing center. The plaintiff also explicitly stated and emphasized to D'Agostino that she had previously had the experience of having her office suddenly and inexplicably relocated while she was on Family and Medical Leave, that this had been extremely distressing to her, and that she wanted to participate in any decision-making that might be made around the issue of the re-location. D'Agostino acknowledged the plaintiff's concerns.

88.     In the meeting, the plaintiff also complained about several compensation issues, including regarding recovery of vacation days on which she had had to work, hours/days not applied to accrued time, and compensation due for performing the duties of two long term vacant director positions, and pointed out that in spite of numerous requests and complaints no action had been taken on those issues.

89.     A few days after the meeting with D'Agostino, the plaintiff received an email indicating that, contrary to her express repeated and clear requests, D'Agostino had made the

14

unilateral decision to relocate her office – rather than the testing center – and to do so without consulting her. D'Agostino's re-location of the plaintiff's office would have put her on a separate floor from her staff and would have made the performance of her duties more difficult and inconvenient and cause further humiliation.

90.     D'Agostino's decision to proceed in this fashion without regard to the explicit and emphatic requests from the plaintiff caused her to suffer extreme emotional distress that worsened her medical conditions and to experience physical injury.

91.     Upon information and belief, while D'Agostino promptly took action that the plaintiff had specifically requested not be taken, he took no action on the compensation issues she had raised and was told by Diane Mazza to re-document the issues she had previously submitted multiple times to HR or her concerns about needing a reasonable accommodation in order to work from home.

92.     On or about February 24, 2022, feeling that she had exhausted any possibility of being able to perform the duties of her job without having to cope with defendant CSCU's callous disregard for her rights and the endangering of her physical and emotional health, the plaintiff stated to D'Agostino in an email her intent to retire.

93.     Plaintiff received no further communications from D'Agostino or her supervisors Harris and Bordonaro regarding her office. The plaintiff arrived to work on February 28, 2022 to find her business equipment, files and personal belongings again removed from her original office without her knowledge and agreement. The plaintiff reported the incident to Public Safety in the absence of a human resources campus representative. The incident caused extreme emotional distress that worsened her medical conditions. Missing items, including missing personal items, were not returned.

15

94.     The plaintiff's retirement was compelled by the plaintiff's deteriorating physical and mental health, which in turn was caused by defendants' repeated efforts to displace her from her job, remove her duties, ignore her requests that she not be exposed to students and staff coming into the vicinity of her office to be tested for Covid-19, ignore her requests to be provided reasonable accommodations, ignore her requests that decisions being made about the location of her office be made in consultation with her, and ignore her requests that action be taken with respect to her compensation.

95.     As a result of the plaintiff's compelled retirement in advance of her planned date of retirement, she has suffered a loss of the wage and benefits of her employment, including but not limited to adverse impacts on her pension benefits.

96.     As a result of the defendants' discriminatory and retaliatory treatment of the plaintiff, the plaintiff suffered and continues to suffer extreme emotional distress, which has significantly worsened her medical conditions.

**Count One: Age Discrimination in Employment (CFEPA)**

1.     The plaintiff restates, re-alleges, and incorporates by reference paragraphs 1 through 96, above.

97.     Due to animus based on the plaintiff's age, the defendant treated the plaintiff less favorably than other, younger employees, including by denying her promotional opportunities, mocking her in the presence of co-workers, removing responsibilities from her position, diminishing her position, taking actions intended to humiliate the plaintiff, discouraging co-workers and external partners from communicating with her, falsely leading others to believe that the plaintiff had retired, and placing the plaintiff in positions that

16

endangered her health, in violation of the age discrimination provision of the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. §46a-60, *et seq.*

**Count Two: Retaliation for Opposing a Discriminatory Employment Practice (CFEPA)**

1.    The plaintiff restates, re-alleges, and incorporates by reference paragraphs 1 through 96, above.

97.    Due to animus based on the plaintiff's exercise of her rights by filing a complaint with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunities Commission, the defendant treated the plaintiff less favorably than other employees, including by denying her promotional opportunities, mocking her in the presence of co-workers, removing responsibilities from her position, diminishing her position, taking actions intended to humiliate the plaintiff, discouraging co-workers and external partners from communicating with her, falsely leading others to believe that the plaintiff had retired, and placing the plaintiff in positions that endangered her health, in violation of the anit-retaliation provision of the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. §46a-60, *et seq.*

**Count Three: Discrimination or Retaliation for Exercise of Rights (FMLA)**

1.    The plaintiff restates, re-alleges, and incorporates by reference paragraphs 1 through 96, above.

97.    Due to animus based on the plaintiff's exercise of her rights under the federal Family and Medical Leave Act, the defendant treated the plaintiff less favorably than other employees, including by denying her promotional opportunities, mocking her in the presence of co-workers, removing responsibilities from her position, diminishing her position, taking actions intended to humiliate the plaintiff, discouraging co-workers and external partners from

17

communicating with her, falsely leading others to believe that the plaintiff had retired, and placing the plaintiff in positions that endangered her health, in violation of the anti-discrimination and/or anti-retaliation provisions of the FMLA.

98.    The defendant's unlawful acts were taken with reckless disregard for the plaintiff's rights under the federal Family and Medical Leave Act.

**Count Four: Denial of a Reasonable Accommodation (Rehabilitation Act of 1973)**

1.    The plaintiff restates, re-alleges, and incorporates by reference paragraphs 1 through 96, above.

97.    The defendant's failure to grant the plaintiff's request for a reasonable accommodation to work from home was in violation of the plaintiff's rights under the Rehabilitation Act of 1973.

98.    The defendant's failure to grant the plaintiff's request for a reasonable accommodation to re-locate the Covid-19 testing site was in violation of the plaintiff's rights under the Rehabilitation Act of 1973.

**Count Five: Disability Based Discrimination in Employment (Rehabilitation Act of 1973)**

1.    The plaintiff restates, re-alleges, and incorporates by reference paragraphs 1 through 96, above.

97.    Due to animus based on the plaintiff's disabilities, the defendant treated the plaintiff less favorably than other employees, including by denying her promotional opportunities, mocking her in the presence of co-workers, removing responsibilities from her position, diminishing her position, taking actions intended to humiliate the plaintiff, discouraging co-workers and external partners from communicating with her, falsely leading

18

others to believe that the plaintiff had retired, and placing the plaintiff in positions that endangered her health, in violation of the Rehabilitation Act of 1973.

## PETITION FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court order the following relief:

1.      Make the plaintiff whole, including by placing plaintiff in a position in defendant's employ which she would have held but for defendant's wrongful discrimination and/or retaliation, including by forcing the plaintiff's premature retirement;

2.      Award plaintiff her economic losses, including lost wages and benefits of employment;

3.      Award plaintiff compensatory damages, including but not limited to damages for her pain, suffering, and emotional distress caused by the defendant's wrongful conduct;

4.      Award the plaintiff double or liquidated damages, as provided by the Family and Medical Leave Act (FMLA);

5.      Award the plaintiff her reasonable attorney's fees and costs; and

6.      Such other relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED
ON BEHALF OF THE PLAINTIFF,
LINDA GUZZO,
BY: / s / Peter Goselin
The Law Office of Peter Goselin
P.O. Box 331313
Hartford, CT 06133
(860) 580-9675
Juris No. 411639

20